No. 21-11111-DD

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

JULIE REGINA,

Plaintiff/Appellant,

v.

THE WEISS GIFTED AND TALENTED SCHOOL, INC.,

Defendant/Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

District Court Case No. 9:19-cv-80913-RKA

# APPELLEE'S BRIEF

Michael A. Holt
Garrett S. Kamen
FISHER & PHILLIPS LLP
*Attorneys for The Weiss Gifted and Talented School, Inc.*
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, The Weiss Gifted and Talented School, Inc. certifies that the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action, including any subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of any party's stock, and other identifiable legal entities related to a party:

Altman, The Honorable Roy K., United States District Judge.

Behren Law Firm, Counsel for Julie Regina.

Behren, Scott M., Counsel for Julie Regina.

Brannon, The Honorable David L., United States Magistrate Judge.

Fisher & Phillips, LLP, Counsel for the Weiss Gifted and Talented School, Inc.

Holt, Michael A., Counsel for the Weiss Gifted and Talented School, Inc.

Kamen, Garrett S., Counsel for the Weiss Gifted and Talented School, Inc.

Matthewman, The Honorable William, United States Magistrate Judge.

Philadelphia Indemnity Insurance Company, Insurer for the Weiss Gifted and Talented School, Inc.

Regina, Julie, Plaintiff/Appellant.

Sconzo Law Office P.A., Counsel for Julie Regina.

Sconzo, Gregory S., Counsel for Julie Regina.

The Weiss Gifted and Talented School, Inc., Defendant/Appellee.

Pursuant to Federal Rule of Appellate Procedure 26.1, The Weiss Gifted and Talented School, Inc. further states that no party has a parent company and no publicly traded corporation owns more than 10 percent of any party's stock.

Dated: April 29, 2022.

Respectfully submitted,

FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

By: /s/ Michael A. Holt
Michael A. Holt
Florida Bar No. 91156
mholt@fisherphillips.com
Garrett S. Kamen
Florida Bar No. 125854
gkamen@fisherphillips.com

*Attorneys for The Weiss Gifted and Talented School, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unnecessary. The dispositive issues have been authoritatively decided. Further, the issues are simple. The district court concluded that the record contained no evidence to refute the school's non-discriminatory reasons for the actions taken or to show that those reasons are mere pretext for discrimination. Oral argument will not change the lack of record evidence and therefore will not aid in the decisional process.

**TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement................C-1

Statement Regarding Oral Argument ..........................................................i

Table of Contents ..................................................................................... ii

Table of Citations.....................................................................................iv

Statement of Subject-Matter and Appellate Jurisdiction ..................................x

Statement of the Issues...............................................................................1

Statement of the Case.................................................................................2

Course of Proceedings and Disposition by the District Court ....................2

Statement of Facts.................................................................................3

A. To keep its accreditation, the school needed to make changes. .4

B. The school hired a new leadership team. ...................................5

C. The new leadership team developed a plan of action. ................8

D. Plaintiff's position was eliminated. .........................................10

E. The plan to end the school's deficit worked. ............................12

Standard of Review..............................................................................14

Summary of the Argument........................................................................15

Argument and Citations of Authority .......................................................17

I. Plaintiff cannot establish a prima facie case because her position was eliminated and she has no evidence of discrimination. ....................19

A. Under a reduction in force analysis, plaintiff has no evidence of intentional discrimination. ....................................................21

B. Plaintiff's discriminatory discharge theory also fails. .............27

C. The district court was not required to consider an unpled failure to promote claim that plaintiff never raised in her pre-suit charge of discrimination. .......................................................28

II. Summary judgment was proper because plaintiff had no evidence that the school's financial considerations were pretext for discrimination. .........................................................................31

Conclusion ..........................................................................................37

Certificate of Complaince ...................................................................38

Certificate of Service ...........................................................................39

Service List ..........................................................................................40

## TABLE OF CITATIONS

### Cases

* *Alvarez v. Royal Atl. Developers, Inc.*,

610 F.3d 1253 (11th Cir. 2010) ........................................................34, 36

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986)........................................................................................14

*Ashkenazi v. S. Broward Hosp. Dist.*,

607 F. App'x 958 (11th Cir. 2015)...................................................................17

* *Ayala v. Sheriff, Broward Cty.*,

594 F. App'x 602 (11th Cir. 2015)...................................................................24

*Batson v. Salvation Army*,

897 F.3d 1320 (11th Cir. 2018) .......................................................................14

*Blizzard v. Marion Tech. Coll.*,

698 F.3d 275 (6th Cir. 2012) ...........................................................................20

*Bradley v. Pfizer, Inc.*,

440 F. App'x 805 (11th Cir. 2011)...................................................................31

* *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*,

446 F.3d 1160 (11th Cir. 2006) .......................................................................32

*Bruno v. Greene Cty. Sch.*,

801 F. App'x 681 (11th Cir. 2020)...................................................................32

*Caloosa Prop. Owners Ass'n, Inc. v. Capitol Specialty Ins. Corp.*,

522 F. App'x 638 (11th Cir. 2013) .......................................................30

*Canning v. Creighton Univ.*,

995 F.3d 603 (8th Cir. 2021) .......................................................20

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986) .......................................................14

*Chanda v. Engelhard/ICC*,

234 F.3d 1219 (11th Cir. 2000) .......................................................14

* *Chapman v. AI Transp.*,

229 F.3d 1012 (11th Cir. 2000) .......................................................18, 36

*Cobb v. City of Roswell*,

533 F. App'x 888 (11th Cir. 2013) .......................................................19

* *Coon v. Ga. Pac. Corp.*,

829 F.2d 1563 (11th Cir. 1987) .......................................................29–30

*D'Angelo v. ConAgra Foods, Inc.*,

422 F.3d 1220 (11th Cir. 2005) .......................................................14

* *Damon v. Fleming Supermarkets of Fla., Inc.*,

196 F.3d 1354 (11th Cir. 1999) .......................................................18, 31

*Dyer v. Paxson Commc'ns*,

267 F. App'x 901 (11th Cir. 2008) .......................................................18

*Gibson v. JetBlue Airways Corp.*,

No. 20-10943, 2021 WL 5368056 (11th Cir. Nov. 18, 2021) .......... 19

*Gogel v. Kia Motors Mfg. of Ga., Inc.*,

967 F.3d 1121 (11th Cir. 2020) .......... 31

*Graves v. Finch Pruyn & Co., Inc.*,

457 F.3d 181 (2d Cir. 2006) .......... 20

*Gray v. City of Jacksonville*,

492 F. App'x 1 (11th Cir. 2012) .......... 25–26

* *Gross v. FBL Fin. Servs., Inc.*,

557 U.S. 167 (2009) .......... 14

*Guimaraes v. NORS*,

366 F. App'x 51 (11th Cir. 2010) .......... 19

* *Hazen Paper Co. v. Biggins*,

507 U.S. 604 (1993) .......... 17

*Jones v. RS & H, Inc.*,

775 F. App'x 978 (11th Cir. 2019) .......... 32

* *Ky. Ret. Sys. v. Equal Emp't Opportunity Comm'n*,

554 U.S. 135 (2008) .......... 17

*Landolfi v. City of Melbourne*,

515 F. App'x 832 (11th Cir. 2013) .......... 14

*Lewis v. City of Union City, Ga.*,

918 F.3d 1213 (11th Cir. 2019) ....................20

*Liebman v. Metro. Life Ins. Co.*,

808 F.3d 1294 (11th Cir. 2015) ....................17–18

*MacPherson v. Univ. of Montevallo*,

922 F.2d 766 (11th Cir. 1991) ....................18

*Mazzeo v. Color Resolutions Int'l, LLC*,

746 F.3d 1264 (11th Cir. 2014) ....................14, 19, 28–29

* *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973) ....................17–19, 21

* *Menefee v. Sanders Lead Co.*,

786 F. App'x 963 (11th Cir. 2019) ....................17, 35

* *Minton v. Am. Bankers Ins. Grp., Inc.*,

No. 02-12942, 2003 WL 21303330 (11th Cir. Feb. 6, 2003) ....................21–23, 27

*Mitchell v. City of LaFayette*,

504 F. App'x 867 (11th Cir. 2013) ....................21, 23

*Mora v. Jackson Mem. Found.*,

597 F.3d 1201 (11th Cir. 2010) ....................17

*Nash v. O.R. Colan Grp., LLC*,

No. 12-cv-60759, 2013 WL 163422 (S.D. Fla. Jan. 15, 2013) ....................35–36

* *O'Connor v. Consol. Coin Caterers Corp.*,
517 U.S. 308 (1996) ........ 19–21

* *Ostrow v. GlobeCast Am. Inc.*,
489 F. App'x 433 (11th Cir. 2012) ........ 35–36

*Perrero v. Spectacor Mgmt.*,
308 F. App'x 327 (11th Cir. 2009) ........ 18

*Reed v. Forney Indus., Inc.*,
800 F. App'x 782 (11th Cir. 2020) ........ 18, 32

*Rinsky v. Cushman & Wakefield, Inc.*,
918 F.3d 8 (1st Cir. 2019) ........ 20

*Rollins v. Telesouth, Inc.*,
833 F.2d 1525 (11th Cir. 1987) ........ 27–28

*Sims v. MVM, Inc.*,
704 F.3d 1327 (11th Cir. 2013) ........ 34

*Skagen v. Sears, Roebuck & Co.*,
910 F.2d 1498 (7th Cir. 1990) ........ 24

*Smith v. J. Smith Lanier Co.*,
352 F.3d 1342 (11th Cir. 2003) ........ 18

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993) ........ 18

* *Thomas v. Miami Dade Pub. Health Tr.*,

369 F. App'x 19 (11th Cir. 2010) ....................29

*Vessels v. Atlanta Indep. Sch. Sys.*,

408 F.3d 763 (11th Cir. 2005) ....................31

* *Vira v. Crowley Liner Servs., Inc.*,

723 F. App'x 888 (11th Cir. 2018) ....................34

*Wilson v. B/E Aerospace, Inc.*,

376 F.3d 1079 (11th Cir. 2004) ....................20

*Zabin v. Air Prods. & Chems., Inc.*,

129 F.3d 1453 (11th Cir. 1997) ....................21

**Statutes**

28 U.S.C. § 1291 ....................x

28 U.S.C. § 1331 ....................x

28 U.S.C. § 1367 ....................x

29 U.S.C. § 623(a)(1) ....................17

Age Discrimination in Employment Act, 29 U.S.C. §§ 1209 *et seq*. ....................x, 17

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................14

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff asserted a claim arising under the laws of the United States. Specifically, plaintiff alleged a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 1209 *et seq*. The district court had supplemental jurisdiction of plaintiff's related state-law discrimination claim pursuant to 28 U.S.C. § 1367 because that claim was so related to the federal discrimination claim that it formed part of the same case or controversy.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because plaintiff appeals from the district court's final judgment for defendant that disposed of all the parties' claims. The district court entered final judgment on March 9, 2021. Plaintiff timely filed her notice of appeal on April 6, 2021—less than 30 days after the date of the judgment.

## STATEMENT OF THE ISSUES

I.

Whether plaintiff failed to establish a prima facie case of age discrimination where her position was eliminated, she was not replaced, and there is no evidence that the school's decision had anything to do with plaintiff's age.

II.

Whether the district court correctly granted summary judgment for the school where the school proffered a nondiscriminatory reason for plaintiff's discharge and where there was no evidence that the reason was pretextual.

## STATEMENT OF THE CASE

Julie Regina ("plaintiff") appeals the district court's summary judgment for the defendant, the Weiss Gifted & Talented School, Inc. (the "school"), in an age-discrimination action brought pursuant to the Age Discrimination in Employment Act ("ADEA") and Florida Civil Rights Act ("FCRA").

### Course of Proceedings and Disposition by the District Court

Plaintiff filed her complaint in this action on July 11, 2019, asserting claims for discriminatory discharge in violation of the ADEA and FCRA. (*See* D.E. 1 at 6, 8.)[1] The school answered and asserted its affirmative defenses, including that the decision to end plaintiff's employment was based on legitimate, nondiscriminatory reasons, that plaintiff failed to exhaust administrative remedies, and plaintiff failed to mitigate damages. (D.E. 5 at 7–8.)

After discovery was complete, both parties sought summary judgment. Plaintiff requested partial summary judgment regarding the school's affirmative defenses based on her failure to exhaust administrative remedies and to mitigate damages. (*See generally* D.E. 32.) The school sought summary judgment on all of

[1] Citations to the record include the docket entry number (abbreviated D.E.) and the applicable paragraph number or the page number on the header generated by the district court's electronic filing system, except that citations to transcripts will refer to the page numbers assigned by the court reporter. Citations to plaintiff's Corrected Initial Brief will be abbreviated "Pl. Br." and will refer to the page number designated by plaintiff at the bottom of the page.

plaintiff's claims. (*See generally* D.E. 35.) The motions for summary judgment were fully briefed. (*See generally* D.E. 32–38, 41–49.)

In a 27-page summary judgment order, the district court closely scrutinized the evidence and concluded that plaintiff "has produced no evidence—direct or circumstantial—for her position that she was let go *because of* her age." (D.E. 56 at 27.) Accordingly, the district court granted the school's motion for summary judgment, denied plaintiff's motion as moot, and entered final judgment for the school. (*Id.*; D.E. 55.) Plaintiff appealed. (D.E. 57.)

**Statement of Facts**

The Weiss Gifted and Talented School is a private, non-profit school that specializes in the education of gifted students. (Pl. Br. at 3; D.E. 36 at ¶ 1; D.E. 34-1 at ¶ 2.) The school is accredited by the Florida Council of Independent Schools ("FCIS") and is led by a head of school, who is responsible for the general operations of the school, including hiring and firing decisions. (D.E. 33-1 at 15, 140–141; D.E. 42-1 at 30; Pl. Br. at 3–4.)

Plaintiff started working at the school in 2004 as a second-grade teacher and worked her way up to assistant head of school by 2013. (D.E. 33-1 at 31, 36; D.E. 33-1 at 62, 76; Pl. Br. at 4.) As assistant head of school, plaintiff was responsible for promoting "smooth day to day internal operations," participating "in the life of the school," maintaining "presence in the classrooms," coordinating "lesson plan

meetings" with teachers, and generally assisting the head of school. (D.E. 33-1 at 31, 105–108; D.E. 34-3; D.E. 36 at ¶ 5.) The assistant head of school position was vacant for two years before plaintiff's promotion. (D.E. 33-1 at 62.)

**A. To keep its accreditation, the school needed to make changes.**

In Fall 2015, FCIS conducted a comprehensive review and evaluation of the school as part of its regular reaccreditation process. (D.E. 36 at ¶ 7; Pl. Br. at 5.) Once complete, FCIS generated a report of its findings, which it delivered to the school. The report included "commendations" for things the school did well and "recommendations" that the school needed to implement. (*See* D.E. 34-5.) Failure to comply with the FCIS recommendations and standards could put the school at risk of losing its accreditation. (D.E. 42-1 at 133; Pl. Br. at 7.)

One FCIS recommendation related to the school's financial conditions. (D.E. 34-5 at 4.) The FCIS report noted that the school ended the prior academic year with a deficit of $282,395. (*Id.*; D.E. 33-1 at 224–25.) This type of deficit required the administration to take corrective action. (*See* D.E. 33-1 at 225; Pl. Br. at 5.)

The FCIS report also identified a "concern regarding the assets to liability ratio," which was calculated as 0.8-to-1. (D.E. 34-5 at 4.) This ratio compares all the school's property and assets on one side of a balance and the school's financial obligations on the other side. (D.E. 34-11 at ¶ 3; Pl. Br. at 6.) Thus, a ratio of less

than 1-to-1 means the school has more liabilities than assets. The school's asset-to-liability ratio violated FCIS standards and the report warned that "the school must work to bring its asset-to-liability ratio into compliance with FCIS/FKC standard 3.8.7." (D.E. 34-5 at 4) (emphasis omitted.) To improve this ratio, the school could increase revenues, decrease expenses, or do both. (D.E. 34-11 at ¶ 3; D.E. 42-1 at 118–19.)

In addition to the financial issues, FCIS determined that the school needed to hire a "full-time counselor." (D.E. 34-5 at 15; D.E. 33-1 at 227–28.) Although plaintiff had been providing support for students, she "didn't have the credentials to be a guidance counselor" and, therefore, was not qualified for that position. (D.E. 42-1 at 49–50; D.E. 33-1 at 21.)

The school needed to address all the FCIS recommendations, inaction was not an option. (D.E. 42-1 at 133.)

**B. The school hired a new leadership team.**

About a month after FCIS provided its final report to the school, the then-head of school, Dr. Denise Spirou, resigned—effective at the end of that year—because the "Board wanted to go in a different direction on how [she] managed the school and it didn't match [her] philosophy." (D.E. 42-1 at 14, 17–18.) As Dr. Spirou described her differences of opinion:

> [The board] wanted me to let go of about [six][2] staff members. We had multiple conversations before that and I explained to them that this is a great team in place; that maybe it's not what you see as right, but it's what I see as the right way. Then also they wanted me to put parents in their place, not give them a voice, and I said "That's not my personality. I'm a proactive person. I may not always agree with parents, but we have to listen to them." And I distinctly remember saying that, "You want me to make changes in the school?" and they said, "Well, what, can't you do it?" I said "No, I can make changes, but I don't want to do it. I like who I am and it's just time for me to move on. You need somebody that, you know, just doesn't have the emotional aspect of it and is just very business-oriented."

(*Id.* at 18.) According to Dr. Spirou, the board wanted her to fire six employees "because they didn't like the teachers who were on staff and they wanted to make changes." (*Id.* at 31.) Dr. Spirou clarified that only two board members ever encouraged her to make personnel changes and that they were not acting on behalf of the board when they shared their opinions with her. (*Id.* at 22, 68–69.)

The school interviewed and offered the head of school position to Dr. Tammy Ferguson in December 2015 with the expectation that she would take the school "out of a deficit model and follow FCIS recommendations." (D.E. 42-5 at 27–29, 84; D.E. 34-1 at ¶ 3; D.E. 33-1 at 109; Pl. Br. at 8.) Dr. Ferguson was well

[2] Dr. Spirou initially mentioned seven staff members, but later recalled that "it was six members, not seven." (D.E. 42-1 at 30.)

qualified for the position and had many years of experience that would help her turn the school around. (*See* D.E. 36 at ¶¶ 17–18; Pl. Br. at 8.)

Dr. Ferguson agreed to take the job only if the school also hired her colleague, Dr. Rudolph Collum, to serve as the school's chief operating officer. (D.E. 42-5 at 23–27, 31–32.) Dr. Collum also has an impressive educational background and work history, including substantial experience as an educator and administrator. (D.E. 42-3 at 13–15, 82–88.) The school agreed and offered Dr. Collum a position as its chief operating officer in December 2015. (D.E. 36 at ¶ 21; D.E. 34-11 at ¶ 6.) By January 2016, Dr. Ferguson and Dr. Collum were in place (respectively) as the new head of school and COO. (*See id.*)

As COO, Dr. Collum's responsibilities mostly related to financial tasks, like budgeting and fundraising, but he also oversaw other aspects of the school's operations such as facilities maintenance, security, cafeteria supervision, technology, and other administrative matters. (D.E. 34-10 at 2.)

To ensure a smooth transition from Dr. Spirou's leadership to Dr. Ferguson's the school asked Dr. Spirou to remain as head of school through the end of the school year and to allow Dr. Ferguson to shadow her for several months. (D.E. 34-1 at ¶ 6; D.E. 42-5 at 45–49.) During this period, Dr. Ferguson gradually assumed more responsibility until she had essentially taken over operational control of the school around March 2016. (*See id.*; D.E. 42-1 at 42.)

### C. The new leadership team developed a plan of action.

From the start, Dr. Ferguson understood that her "top priority" was to "increase the asset to liability ratio so that the school could meet its accrediting standards" and that the school would need to reduce expenses. (D.E. 34-1 at ¶ 4.) Therefore, Dr. Ferguson assessed the school's staffing model, including "look[ing] at every person's schedule, their teaching time, percent of teaching time in front of students and evaluated that as to whether that should be a full-time position, part-time position or no position." (D.E. 42-5 at 48.) Dr. Ferguson explained that she looks for functions she can absorb to help bring a school out of deficit:

> So when I can go can [sic.] into a school that's in a deficit model, I see how much of that, of staff that I can absorb into what I do, and so that's really my analysis, is how much of that can I absorb. So we can look at if I can absorb it and do it. . . . So I look at their job duties to see what I can absorb so that I can look at eliminating positions that I can take on that job.

(*Id.* at 51.) After observing and assessing the school's operations, Dr. Ferguson determined that she could largely absorb the functions performed by the two assistant heads of school—the positions held by plaintiff and another person. (*Id* at 52.)

Dr. Ferguson also instructed Dr. Collum to carefully analyze the teaching schedule to determine whether other positions could be eliminated. (D.E. 42-5 at 109–12; D.E. 42-3 at 46–47). Dr. Collum found that plaintiff—who had been

responsible for coordinating teaching schedules—created a "very poor schedule" that "caused teacher inequity regarding teacher workloads within the school," created negative "financial implications," and deprived students of the "best educational opportunity that they should have." (*Id.*)

Dr. Collum's analysis led to further cuts. For example, the school had a music teacher (making $100,000 a year) and a teaching musical artist (making $70,000 a year). (D.E. 42-5 at 110.) When Dr. Ferguson learned that the music teacher was working 50 percent of the time (or less), she decided to eliminate the teaching artist position. (*Id.*) She also cut a media specialist position. (*Id.* at 112.)

Dr. Ferguson also looked for ways to increase revenues through improved marketing and outreach. (*See* D.E. 42-5 at 112–14.) The school replaced the vacant "Director of Communications" position with a "Director of Marketing, Admissions, and Communications." (D.E. 34-11 at ¶ 10.) Dr. Ferguson believed this new position would help boost enrollment, which would increase revenue. (D.E. 42-5 at 59.) In April 2016, Dr. Ferguson hired her former colleague Brittany Steele Theimer ("Ms. Steele") for this new position. (*Id.* at 57, 59; D.E. 34-12 at 16.) Ms. Steele's duties included promoting the school through various media platforms, including targeted advertising, television, newspapers, and the internet. (D.E. 34-13.)

**D. Plaintiff's position was eliminated.**

On May 11, 2016, plaintiff asked Dr. Ferguson and Dr. Collum for an impromptu meeting at which she asked if her contract would be renewed for the following year. (D.E. 33-1 at 153.) Dr. Ferguson told her that it would not be and that both assistant head of school positions would be eliminated. (D.E. 42-5 at 74–75; D.E. 42-3 at 54:4.) Plaintiff asked if there were other positions available. (D.E. 33-1 at 153.) According to plaintiff, Dr. Ferguson said there were none (although Dr. Ferguson recalls the conversation differently). (*Id.*; D.E. 42-5 at 75.) That evening, plaintiff telephoned four of the school's five board members and one of them told plaintiff there were other jobs available at the school. (D.E. 33-1 at 159.)

The next day, on May 12, 2016, Dr. Ferguson approached plaintiff and "said, oh I heard—[the board member] told me that you talked to him and you're interested in a job." (*Id.*) The two discussed the possibility of a language arts teaching position and plaintiff told Dr. Ferguson she was interested. (*Id.*) According to plaintiff, Dr. Ferguson was unsure what the position would pay. As plaintiff recounts the conversation, plaintiff asked "if there is a job, how much would it pay." (D.E. 33-1 at 160.) Dr. Ferguson explained that did not "know what a job would pay, but it won't pay you for the last nine years because you haven't been in the classroom." (*Id.*) Instead, the pay would take into account the 12 or 13 years of experience plaintiff had as a classroom teacher. (*Id.*) Plaintiff asked how

much the pay would be based on her years of experience and Dr. Ferguson said, "I don't know, I'll have to get back with you." (*Id.*) Plaintiff says she never heard back. (*Id.*) Later in the day on May 12, plaintiff requested to take off 21 consecutive days—essentially the remainder of the school year. (D.E. 33-1 at 76; D.E. 42-5 at 71, 89–91.)

Dr. Ferguson testified that she told plaintiff to let her know if she was interested in the language arts teaching position by May 20, 2016. (D.E. 34-1 at ¶ 7.) On May 21, 2016, when Dr. Ferguson did not hear back from plaintiff, she offered the language arts teaching position to another candidate, Kelsey Dougherty, with whom Dr. Ferguson had previously worked for several years. (*Id.* at ¶ 8; D.E. 42-5 at 78–79.) Plaintiff also claims that she was also interested in a social studies position, but that role had been filled by May 1—which is before Dr. Ferguson told plaintiff that her position was being eliminated. (*See* Pl. Br. at 13.)

Plaintiff returned to the school on May 26 to clear out her office and to turn in her keys. (D.E. 33-1 at 162; Pl. Br. at 12.) Plaintiff also met with Ms. Steele to "go through all of [plaintiff's] job duties descriptions with [Ms. Steele], show her where all of the files were, where all of [plaintiff's] materials were, [and] go through the filing cabinets in the back rooms." (D.E. 33-1 at 151.) Later that day or the next day, Dr. Ferguson emailed plaintiff to let her know that Ms. Dougherty had accepted the language arts teaching position, so there were no open positions

at the school. (*Id.* at 162; Pl. Br. at 12.) Plaintiff was 56 years old when her position was eliminated. (D.E. 33-1 at 10.)

**E. The plan to end the school's deficit worked.**

Dr. Ferguson's plan to restructure the school's administration immediately reduced personnel costs for those positions.

| Eliminated Positions | Cost Savings | New Positions | Cost |
|---|---|---|---|
| Chief Financial Officer | $106,568 | Chief Operating Officer | $161,568 |
| Director of Communications | $30,000 | Director of Marketing, Admissions, and Communications | $106,568 |
| Assistant Head of School–Middle School | $76,568 | N/A | $0 |
| Assistant Head of School–Lower School | $68,243 | N/A | $0 |
| **TOTAL** | **$281,379** | **TOTAL** | **$268,136** |

(D.E. 34-11 at 3.)[3] While those savings alone may not have been enough to bring the school out of the deficit it had been in, combined with Dr. Ferguson's other strategies, the school has gone from an annual deficit of more than $280,000 to a surplus of $499,000. (D.E. 42-5 at 115.) Part of this improvement was driven by an increase in overall enrollment. Between 2016 and 2020, the school's enrollment grew by 50 students, or roughly 20 percent. (*See* D.E. 42-5 at 99; D.E. 34-5 at 1.)

[3] Before settling on an administrative structure for the 2016–2017 school year, Dr. Ferguson and Dr. Collum considered various other options, some of which would have retained plaintiff in an assistant head of school position. (*See, e.g.*, D.E. 42-6; 42-5 at 95–96; D.E. 42-3 at 72–75.) Some draft budgets therefore reflect an increase in payroll expenses based on plans that later changed—including positions that were later eliminated. (*See id.*)

The assistant head of school positions were not filled, but the school has added teachers to meet the increase in enrollment. (D.E. 42-5 at 96, 99–100; D.E. 42-3 at 63–64; Pl. Br. at 10.)

Plaintiff filed a charge of discrimination alleging that she was replaced by Dr. Collum, who was hired months before the decision to eliminate her position, and Ms. Steele, who was hired for the marketing position before plaintiff's position was eliminated. (D.E. 33-4.) Plaintiff filed this action. (*See generally* D.E. 1.)

**Standard of Review**

This Court should review the district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court. *Batson v. Salvation Army*, 897 F.3d 1320, 1325–26 (11th Cir. 2018); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005).

Summary judgment should be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Landolfi v. City of Melbourne*, 515 F. App'x 832, 833 (11th Cir. 2013). To determine which facts are material, a court must look to the substantive law upon which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Id.* at 247–48.

The same legal standards and frameworks apply to age discrimination claims under the FCRA and the ADEA. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000). To establish an age discrimination claim, a "plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

## SUMMARY OF THE ARGUMENT

The three issues plaintiff raises in this appeal are all essentially the same issue presented differently: whether plaintiff has shown a prima facie case of age discrimination. She has not. Plaintiff has not shown that she was replaced by a younger employee or any other fact that would give rise to an inference of discrimination. Nor does plaintiff meaningfully address the school's legitimate, nondiscriminatory reasons for its actions other than to call them pretextual with no evidence to support that assertion.

Whether described as a "reduction in force analysis" or a "discriminatory discharge theory" (*see* Pl. Br. at 17, 21) or something else, the threshold for asserting a prima facie case requires a plaintiff to adduce evidence to support an inference of discrimination. The district court correctly concluded that plaintiff was not replaced by Dr. Collum or Ms. Steele, meaning she cannot simply point to the age of her replacement to establish a prima facie case. With a complete absence of evidence to support her claim, summary judgment was appropriate.

Even if plaintiff could establish a prima facie showing, the school has met its burden of proffering a legitimate, nondiscriminatory reason for its actions. Specifically, the school needed to take action to improve its financial standing so it could meet its accreditation standards. One of the ways it sought to do so was by reducing costs through eliminating unnecessary positions, while taking other steps

to increase enrollment (such as focusing on marketing and outreach). Ultimately, these strategies worked. But, even if they did not, there is no evidence that these reasons were not the real motivators for the school's actions or that unlawful discrimination was the real reason the school acted as it did.

The judgment should be affirmed.

## ARGUMENT AND CITATIONS OF AUTHORITY

The Age Discrimination in Employment Act prohibits employers from firing employees who are forty years or older because of their age. 29 U.S.C. § 623(a)(1); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). To prevail in an age discrimination case, a "plaintiff must prove by a preponderance of the evidence that age was the 'but for' cause of the employer's adverse decision." *Menefee v. Sanders Lead Co.*, 786 F. App'x 963, 966 (11th Cir. 2019) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).[4] In other words, an age discrimination claim fails unless the employee shows that her age actually played a role in the decision and was a determinative factor as to the outcome. *Ky. Ret. Sys. v. Equal Emp't Opportunity Comm'n*, 554 U.S. 135, 142 (2008); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Age discrimination may be shown through either direct or circumstantial evidence. *Mora v. Jackson Mem. Found.*, 597 F.3d 1201, 1204 (11th Cir. 2010). Where, like here, a plaintiff offers no direct evidence of discrimination, courts apply the familiar burden-shifting analysis described in *McDonnell Douglas Corp.*

---

[4] "Federal case law interpreting the ADEA applies to cases arising under the FCRA." *Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958, 960–61 (11th Cir. 2015) (cleaned up) (quoting *City of Hollywood v. Hogan*, 986 So. 2d 634, 641 (Fla. Dist. Ct. App. 2008)). Thus, plaintiff's state-law FCRA claims "rise or fall with the ADEA claims." *Id.* at 961.

*v. Green*, 411 U.S. 792 (1973). *See Liebman*, 808 F.3d at 1298; *Smith v. J. Smith Lanier Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003); *see generally* Pl. Br. at 17–25.[5]

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination. *Dyer v. Paxson Commc'ns*, 267 F. App'x 901, 902 (11th Cir. 2008); *Chapman v. AI Transp.*, 229 F.3d 1012, 1014 (11th Cir. 2000). If the employee can do so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Chapman*, 229 F.3d at 1014; *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999); *Perrero v. Spectacor Mgmt.*, 308 F. App'x 327, 329 (11th Cir. 2009). If the employer can meet this "light" threshold, the burden shifts back to "the employee [to] show that the reason was a pretext and that unlawful discriminatory animus was the actual motivation." *Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 786 (11th Cir. 2020); *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 775–76 (11th Cir. 1991).

Here, the district court properly granted the school's motion for summary judgment because plaintiff did not establish a prima facie case of discrimination and offered no evidence to show the school's proffered reasons for its actions were mere pretext to hide unlawful discrimination.

---

[5] Only "the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" constitute direct evidence. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).

**I. Plaintiff cannot establish a prima facie case because her position was eliminated and she has no evidence of discrimination.**

The district court was correct to enter summary judgment for the school because plaintiff failed to meet her simple burden of establishing a prima facie case.

Under the *McDonnell Douglas* framework, to establish a prima facie case of age discrimination a plaintiff must present evidence that she was: (1) over the age of 40 and a member of the protected class; (2) qualified for the position; (3) subjected to an adverse employment action; and (4) either replaced by a substantially younger employee or "suffered from disparate treatment because of membership in the protected class." *Gibson v. JetBlue Airways Corp.*, No. 20-10943, 2021 WL 5368056, at *4 (11th Cir. Nov. 18, 2021); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996); *Mazzeo*, 746 F.3d at 1270–71; *Cobb v. City of Roswell*, 533 F. App'x 888, 12 (11th Cir. 2013). There is no dispute in this case that plaintiff was a member of the protected class, qualified for the position she held as assistant head of school, and subjected to an adverse employment action when her position was eliminated.

Plaintiff's claim fails because she cannot establish the fourth element, which courts sometimes modify or describe differently to address the specific context of a particular case. *See Guimaraes v. NORS*, 366 F. App'x 51, 55 (11th Cir. 2010) (noting that the methods for establishing a prima facie case "are not fixed; they are

flexible and depend to a large extent upon the employment situation"); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (same); *see also Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc) (explaining that analysis of comparators may be necessary as part of a plaintiff's prima facie case). But the main focus is always the same—a plaintiff must show some evidence suggesting the decision was based on age—because a prima facie showing "requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor*, 517 U.S. at 312 (cleaned up).[6]

In a case where an employee has been fired and the employer hires a replacement for the position, the fact that a replacement employee is substantially younger than the plaintiff is enough to support an inference that age was a factor in the decision-making. *See, e.g.*, *O'Connor*, 517 U.S. at 313. Plaintiff refers to this as the "discriminatory discharge theory." (*See* Pl. Br. at 21; D.E. 56 at 21.) Where

---

[6] Other circuits use different language to describe the fourth element. *E.g.*, *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019) (requiring plaintiff to show "the adverse employment action occurred under circumstances giving rise to an inference of discrimination" which could include replacement by a substantially younger employee); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006) (same); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (requiring a plaintiff to prove "circumstances that support and inference of discrimination"); *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021) (requiring a plaintiff to show "there is some additional evidence that age was a factor in the employer's termination decision").

an employer eliminates a position, however, the plaintiff cannot identify a replacement employee to serve as a comparator. Therefore, courts require the plaintiff to provide "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Zabin v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997); *see also Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) ("The variant test alters the fourth prong of the *McDonnell Douglas* test, that a person outside the protected class replaced the plaintiff, because, in RIFs, employers rarely seek replacements for the discharged employee."). Plaintiff refers to this iteration of the prima facie standard as the "reduction in force analysis." (Pl. Br. at 17.) No matter how it is framed, the prima facie requirement always requires the plaintiff to show evidence from which discrimination could be inferred. *See O'Connor*, 517 U.S. at 312. Regardless of how the standard is framed, plaintiff cannot meet it.

### A. Under a reduction in force analysis, plaintiff has no evidence of intentional discrimination.

The record makes clear that plaintiff's position was eliminated and thus the reduction in force analysis is the proper method for evaluating plaintiff's prima facie case. In *Minton v. American Bankers Insurance Group, Inc.*, No. 02-12942, 2003 WL 21303330, at *1 (11th Cir. Feb. 6, 2003), this Court considered whether a plaintiff's position was eliminated or whether he was replaced by another

employee. To answer that question, the Court compared the plaintiff's job title and responsibilities with those of his alleged replacements. *Id.* The Court noted that nobody assumed the plaintiff's title and that his responsibilities were distributed among several other employees. *Id.* Accordingly, the Court concluded Minton's position was eliminated, which meant he would need to show more than the age of his alleged replacement to establish a prima facie case. *See id.*

The same is true here. Like in *Minton*, it is undisputed that nobody at the school assumed the title of assistant head of school after plaintiff's employment ended. (*See* Pl. Br. at 10.) There is also no evidence that either Dr. Collum or Ms. Steele took on plaintiff's position. There is very little overlap in their job descriptions other than duties that are common to all employees. (*Compare* D.E. 34-3, *with* D.E. 34-10 *and* D.E. 34-13.) For example, Plaintiff's role was focused on students and assisting the head of school. (*See* D.E. 34-3.) In contrast, Dr. Collum's role as COO was focused largely on the school's finances, maintenance, and construction issues and Ms. Steele focused externally on prospective students, parents, and donors. (*See* De. 34-10 at 2; D.E. 34-13.) Although Dr. Collum assisted with student discipline, that is not the main focus of his work and it makes sense that when a position is eliminated, some of the job duties will need to be distributed to other employees. *See Minton*, 2003 WL 21303330, at *1 (noting that

alleged replacement took on some, but not all, of the plaintiff's duties while other duties were distributed to different employees).

Ms. Steele admitted that, like plaintiff, she had a responsibility "to sustain and enhance the school's climate and culture, involving faculty and families in support of the school's mission, vision, and values" and "to participate in the life of the school and establish a campus presence in order to retain a clear sense of the program." (*See* D.E. 42-7 at 30–37.) However, these expectations apply to all employees at the school. (*Id.* at 65) ("Q: So other than things that you have done as part of the scheduling committee or your participation in the admissions process or your participation in things that were every employee's or every administrator's responsibility, you don't have any of Ms. Regina's job duties today, do you? A: No."). Plaintiff's position was therefore eliminated meaning the reduction in force analysis is appropriate. *See Minton*, 2003 WL 21303330, at *1.

Under the reduction-in-force analysis, "the plaintiff must produce some evidence that the employer did not treat [her] neutrally with respect to his age, but, instead discriminated based upon it. The evidence must lead the factfinder to reasonably conclude either that the employer consciously refused to consider retraining or relocating the plaintiff due to his protected-class membership, or that the employer considered [her] protected-class membership as a negative factor in that consideration." *Mitchell*, 504 F. App'x at 870 (cleaned up). Plaintiff cannot

meet this burden because she admits that except for the coincidence of her age and the elimination of her job, she has no evidence that her age played any factor here. (D.E. 33-1 at 187–88.) A person "does not have a meritorious claim simply because he or she is over the age of forty and has [suffered an adverse action]." *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir. 1990).

Plaintiff's primary argument is that she was qualified for other positions at the school—including the teaching positions in language arts and social studies and that the school could have retained her by giving her one of those positions. (*See* Pl. Br. at 19.) The problem is that most of the positions she points to were filled at the time of her termination. Dr. Ferguson had already been hired as head of school, Dr. Collum was in the COO position, and Ms. Steele had been hired for the marketing role. The school had no obligation to oust another employee to give the position to plaintiff. "Nothing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired." *Ayala v. Sheriff, Broward Cty.*, 594 F. App'x 602, 603 (11th Cir. 2015) (cleaned up).

Plaintiff's argument regarding the teaching position is contradicted by her own deposition testimony in which she confirmed that her claims were premised only on her termination and being passed up for the positions filled by Dr. Collum and Ms. Steele. (D.E. 33-1 at 213–14.) Even so, plaintiff claims that the social studies teaching position was filled before her position was eliminated—meaning it

was not available to her. (Pl. Br. at 13.) That leaves only the language arts position as a potential basis for her claim (albeit one that she testified she was not pursuing).

While plaintiff remembers the details surrounding the language arts position differently from Dr. Ferguson, both testified that they discussed the position on or before May 12, 2016, and that each thought the ball was in the other's court. The very same day they discussed the position, plaintiff requested to take the remainder of her paid vacation so that she could avoid coming back to work for the rest of the school year. Dr. Ferguson ultimately offered the position to somebody that she had known and worked with for many years. There is simply nothing that suggests the decision to hire Ms. Dougherty had anything to do with plaintiff's age.

In an attempt to salvage her claim, plaintiff argues that comments by one or two members of the school's board in the Fall of 2015 suggested that those members wanted plaintiff fired because of her clothing, image, or physical appearance. (*See* Pl. Br. at 19–20.) These comments are inadmissible. *See*, *e.g.*, *Gray v. City of Jacksonville*, 492 F. App'x 1, 10 n.4 (11th Cir. 2012) (finding that plaintiff's testimony about a derogatory statement by a manager, which was reported to plaintiff by a co-worker, constituted inadmissible double hearsay). But even if they were proper evidence, plaintiff's characterization of these alleged stray remarks is not supported by the record.

The former head of school, Dr. Spirou, testified that she had several conversations with a parent who was also a board member during which the board member conveyed opinions about six employees. (D.E. 42-1 at 14, 17–18, 22, 31–32, 68–69.) Dr. Spirou understood that these comments reflected an individual's opinion—not the desire of the board. (*Id.*) Although Dr. Spirou believed the board was looking for a new image for the school, she explained that she understood that to mean the school should be run more professionally, "more like a money-making business." (D.E. 42-1 at 125.) And whether any board member made a stray comment in 2015 is completely irrelevant because there is no evidence that any such information was passed along to Dr. Ferguson, who did not even work at the school in the Fall of 2015, and who was the sole decision maker for the elimination of plaintiff's position. (D.E. 42-1 at 142–43; D.E. 33-1 at 156–57; D.E. 42-3 at 82.)

Plaintiff's final argument to support her allegation that Ms. Steele replaced her is her testimony that, on her last day, she "had to go through all of [her] job duties descriptions with [Ms. Steele], show [Ms. Steele] where all of the files were, where all of [the plaintiff's] materials were, [and] go through the filing cabinets in the back rooms." (D.E. 33-1 at 151.) Plaintiff describes this as "training" her replacement. Providing information about where files and materials are kept and an overview of pending matters is precisely what happens in every run-of-the-mill exit procedure. It is not evidence of discriminatory intent.

Simply put, plaintiff cannot show evidence that suggests anything other than the elimination of her position and a miscommunication about the one open position at the school. There is certainly no evidence to suggest that plaintiff's age had anything to do with any of Dr. Ferguson's decision making. Plaintiff therefore cannot establish a prima facie case and the inquiry could and should end there.

**B. Plaintiff's discriminatory discharge theory also fails.**

Even though this case is properly analyzed under a reduction-in-force framework, plaintiff argues that she has alternatively stated a claim under her discriminatory discharge theory. That argument fails and collapses back into the first because it relies upon her ability to show that "a substantially younger person filled the position from which she was discharged." (*See* Pl. Br. at 21) (citing *Kragar v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)). As described above, nobody filled the assistant head of school position. In fact, plaintiff admits as much in her brief. (Pl. Br. at 10.) Further, while some of plaintiff's job duties were distributed to other employees, those employees are performing completely different roles—such as head of school, COO, and marketing director. This Court has held that under similar circumstances, a plaintiff cannot show that she has been replaced. *See Minton*, 2003 WL 21303330, at *1.

Plaintiff relies on two inapposite cases. (*See* Pl. Br. at 22.) In *Rollins v. Telesouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987), the Court held that an employee

provided evidence to support a prima facie case of discrimination where there was evidence that the employer "intended to fire her, restructured and relabeled her position, hired someone else to fill it, had her train that person, and then terminated her." *Id.* at 1529. In *Mazzeo v. Color Resolutions, International, LLC*, 746 F.3d 1264 (11th Cir. 2014), this Court refused to apply the reduction-in-force standard where the plaintiff provided technical and sales services to clients in parts of Florida and Georgia. *Id.* at 1266. After firing the plaintiff, the company merged two sales territories (including the area formerly served by the plaintiff) and hired a much younger person to serve them both. *Id.* None of those facts is present here.

Because plaintiff cannot show she was replaced by a substantially younger employee (or anybody, for that matter), she must show some other evidence that would support an inference of discrimination—which is the same standard as the reduction-in-force analysis described above, and fails for the same reasons.

### C. The district court was not required to consider an unpled failure to promote claim that plaintiff never raised in her pre-suit charge of discrimination.

Plaintiff's third argument that she raised a prima facie case is based on an unpled claim that plaintiff could not bring because she did not raise it in her administrative charge. In her EEOC charge, plaintiff alleged:

> I am 56 years old. I began working for the [school] in or around August 2004, as a School Teacher. I was later promoted to Assistant Head of the School. During my tenure with the [school], I witnessed a pattern of

> dismissal, demotion, and reduction of hours against older employees. . . . On May 11, 2016, I was told by [Dr. Ferguson] I would not be getting a contract for the 2016-2017 school year and I would not be coming back. I was later replaced by two younger employees, Ms. Brittny [sic.] Steele, Director of Marketing & Admission/early 30s) and Mr. Rudolph Collum, Chief of Operations/late 30s). I was not allowed to apply for neither positions [sic.] nor any other available positions in the school.

(D.E. 33-4.) Nothing in her EEOC charge or in her complaint alleges a claim based on failure to promote. (*Id.*; D.E. 1.)

Because her new failure to promote claim was not raised with the EEOC and was not pled, it is improper for plaintiff to attempt to assert it now on appeal. *See Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 22–23 (11th Cir. 2010) (plaintiff's "EEOC charge specifically described two acts of retaliation that were presented to the EEOC for investigation . . . any other acts of retaliation that occurred prior to the date of the EEOC charge that were not included in the charge were not exhausted and could not be considered by the district court"); *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1568–69 (11th Cir. 1987) (affirming district court's refusal to allow plaintiff to litigate unpled claims even though she may have referenced them in pretrial stipulations and discovery papers).

Further, when asked at her deposition about the basis of her claims, plaintiff identified only the decision to hire Dr. Ferguson (which is also not pled), her termination, and "being passed up" for the positions filled by Dr. Collum and Ms.

Steele. (D.E. 33-1 at 213–14.) The head of school, COO, and marketing director positions were all filled before plaintiff's position was eliminated and thus she could not be promoted into them when her position was eliminated. Because she never identified the teaching positions as part of her charge or complaint, she should not be permitted to raise them now. And there is nothing improper about the district court refusing to consider unpled claims. *See Coon*, 829 F.2d at 1568–69; *Caloosa Prop. Owners Ass'n, Inc. v. Capitol Specialty Ins. Corp.*, 522 F. App'x 638, 639 n.1 (11th Cir. 2013) (declining to consider unpled claims on appeal).

Regardless, plaintiff has not shown that she was qualified for any promotion. She has adduced no evidence showing what the qualifications for the positions were or whether she possessed them (nor can she attempt to do so in her reply brief). Indeed, she did not have the requisite qualifications and each of the selected candidates is far more qualified. Dr. Ferguson, Dr. Collum, and Ms. Steele all have advanced degrees in education leadership and certifications that plaintiff does not hold. (*See* D.E. 42-5 at 11–23, 55; D.E. 42-3 at 13–15, 82–88; D.E. 33-1 at 13–14, 20–21, 217, 251).

The district court was correct to grant summary judgment because no matter which standard is applied, plaintiff has failed to establish a prima facie case of discrimination. The judgment should be affirmed.

## II. Summary judgment was proper because plaintiff had no evidence that the school's financial considerations were pretext for discrimination.

Even if plaintiff could establish a prima facie case, summary judgment is still required because the school has a legitimate, nondiscriminatory reason for its actions. Plaintiff all but ignores this issue in her brief because she cannot show the reasons to be pretextual.

Once a plaintiff has made a prima facie case, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its actions. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). "The employer's burden at this phase is "exceedingly light." *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 808 (11th Cir. 2011); *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769–70 (11th Cir. 2005) (explaining that if an employer "articulates a clear and reasonably specific non-discriminatory basis for its actions," it has met its burden). Courts are not to judge or weigh the wisdom of the employer's reason, because it is well established that "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory or retaliatory reason." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020) (en banc). In fact, the wisdom of a defendant's decision is irrelevant. *Damon*, 196 F.3d at 1361.

If the employer can meet this "light" threshold, the burden shifts back to "the employee [to] show that the reason was a pretext and that unlawful

discriminatory animus was the actual motivation." *Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 786 (11th Cir. 2020). "An employee must meet the employer's proffered reason head on and rebut it." *Bruno v. Greene Cty. Sch.*, 801 F. App'x 681, 684 (11th Cir. 2020). "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.*"* *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Hicks*, 509 U.S. at 515) (emphasis in original). A plaintiff may establish pretext by "showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale. But plaintiffs may not recast the reason or merely quarrel with its wisdom." *Jones v. RS & H, Inc.*, 775 F. App'x 978, 986 (11th Cir. 2019).

The school has offered unrefuted evidence of its legitimate, non-discriminatory reasons for not renewing plaintiff's employment contract. Dr. Ferguson decided to eliminate plaintiff's position as part of her strategy to improve the school's finances. It is undisputed that improving the school's financial condition was Dr. Ferguson's top priority and that improvement was needed in light of the FCIS report to ensure the school would retain its accreditation. (*See* D.E. 34-1 at ¶ 4; D.E. 34-5 at 4.) Dr. Ferguson's overall plan involved both reducing expenses and increasing revenue through increased enrollment. (*See, e.g.*, D.E. 42-5 at 48, 51, 52, 59, 109–14; D.E. 42-3 at 46–47.) Dr. Ferguson had to

make difficult financial decisions, but these decisions had nothing to do with plaintiff's age. (D.E. 34-1 at ¶ 12.)

Ultimately, these strategies worked. In the short-term, the school saved more than $13,000 by eliminating four positions (two assistant heads of school, a CFO, and a director of communications) and creating two new positions (COO and director of marketing). (D.E. 34-11 at 3.) By focusing on increasing enrollment, the school was able to improve its financial position substantially after a few years—going from more than $280,000 in annual deficit to nearly $500,000 in surplus. (D.E. 42-5 at 115.)

Plaintiff cannot show that this truthful explanation is a ruse to hide illegal discrimination, especially where plaintiff admits she has no evidence or basis to dispute the FCIS calculation of the asset-to-liability ratio and where she admits that the school had to implement the FCIS recommendations. (D.E. 33-1 at 224–25.) In fact, plaintiff agreed that it is important for a "school's budget [] to be carried out in a way that best serves the school," which includes ensuring that "its expenses are being met by the revenues" and testified that:

> it would make sense not to go out and spend an awful lot of money after this recommendation came through, you wouldn't want to try to . . . spend a lot of money or start paying out astronomical amounts of money once that recommendation came through . . . you'd want to try and save as much as you could.

(D.E. 33-1 at 216–18, 226.)

Plaintiff attacks the school's efforts by pointing to draft budget papers in which Dr. Collum was modeling the costs of various structures for the 2016–2017 school year and suggesting that the school actually spent more in payroll costs than in the prior year. (*See* Pl. Br. at 20, 23.) Even if that were correct, plaintiff completely misses the point (and the law).

First, it is well established that financial concerns are a legitimate, nondiscriminatory reason for a company to reduce its workforce. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1334 (11th Cir. 2013).

Second, even if the school paid more in salary, it saved money by eliminating unnecessary positions (including plaintiff's) and thus paying fewer employees in total. *See Vira v. Crowley Liner Servs., Inc.*, 723 F. App'x 888, 895 (11th Cir. 2018) (a decision may be based on financial considerations where an employee was hired before the layoff decision, and the layoff resulted in defendant paying one salary instead of two). Plaintiff's argument is nonsensical because she criticizes the school for spending money on employees, while arguing at the same time that the school should have paid for an additional position (hers), which would only have increased its spending further. Regardless, there is no evidence that the school was not trying to reduce its spending, which is what really matters for purposes of the pretext analysis. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

Even if the restructuring did lead to increased costs as plaintiff speculates, a defendant's failure to actually save money does not mean it wasn't trying to save money. *See Ostrow v. GlobeCast Am. Inc.*, 489 F. App'x 433, 437 (11th Cir. 2012) (rejecting plaintiff's argument that failed attempt to save money was evidence of pretext because such an argument "merely quarrels with the wisdom of [the] restructuring decision" and noting that the proper inquiry is whether the employer "believed in good faith (even mistakenly) that his restructuring plan would save money, not whether it in fact did so")

Third, the school is free to reduce expenses as it sees fit, so long as it does not discriminate. *See Nash v. O.R. Colan Grp., LLC*, No. 12-CV-60759, 2013 WL 163422, at *6 (S.D. Fla. Jan. 15, 2013) (courts will not "second-guess [defendant's] decision to respond to an undisputed economic downturn by cutting its workforce, instead of taking other measures such as cutting bonuses and raises as suggested by plaintiff") (cleaned up).

Finally, whatever plaintiff may think about how the school could have decreased expenses or increased revenues and who it should have hired, the "inquiry into pretext centers on the employer's beliefs, not the employee's." *Menefee v. Sanders Lead Co., Inc.*, 786 F. App'x 963, 966 (11th Cir. 2019). This standard recognizes that there are many ways an employer may accomplish its goals, and the Court should not attempt to replace the employer's judgment with its

own (or with plaintiff's). Courts "do not sit as a 'super personnel department,' and must take care not to second-guess the employer's business judgment." *Ostrow*, 489 F. App'x at 436 (cleaned up).

Regardless, to show pretext, plaintiff would have to do more than suggest that the school could or should have taken a different approach to improving its finances. *Chapman*, 229 F.3d at 1030. She would need to show that the school's reasons are untrue and that age discrimination is the real motivation. She has come nowhere near that type of showing. *See Alvarez*, 610 F.3d at 1266. (explaining that "the inquiry into pretext centers on the employer's beliefs, not the employee's").

The school also has legitimate nondiscriminatory reasons for its hiring decisions regarding the positions plaintiff now claims she wanted (i.e., head of school; chief operating officer; and marketing and admissions). In each instance, the school hired a qualified candidate who had been part of Dr. Ferguson's team at other schools. Once these positions were filled—which happened before plaintiff's position was eliminated—the school had no obligation to offer the positions to plaintiff just because the employees holding those positions were younger. Plaintiff cannot prove pretext based on the decision to retain younger employees, while eliminating her position. "The mere fact that the defendant retained a younger employee rather than [her] does not establish that plaintiff's age was the 'but for' cause of the decision to end [her] employment." *See Nash*, 2013 WL 163422 at *5

(citing *Chavez v. URS Fed. Tech. Servs.*, 504 F. App'x 819, 823 (11th Cir. 2013) (in the sex discrimination context, the fact that defendant retains a female plaintiff's male co-worker "does not transform a business decision, which we will not second-guess into discrimination")).

The school has legitimate, nondiscriminatory reasons for eliminating plaintiff's position, and choosing others for the long list of positions plaintiff now claims she wanted. Plaintiff offered no evidence in rebuttal because none exists.

## CONCLUSION

The district court correctly concluded that plaintiff's age discrimination claims fail as a matter of law. She has not established a prima facie case nor has she shown that the school's stated reasons for its actions were pretext or that the real reason was discriminatory animus. The judgment should be affirmed.

FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

By: /s/ Michael A. Holt
Michael A. Holt
Florida Bar No. 91156
mholt@fisherphillips.com
Garrett S. Kamen
Florida Bar No. 125824
gkamen@fisherphillips.com
*Attorneys for The Weiss Gifted and Talented School, Inc.*

**CERTIFICATE OF COMPLAINCE**

I HEREBY CERTIFY that the foregoing document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 8,460 words. This document also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word using Times New Roman, 14-point font.

FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

By: /s/ Michael A. Holt
Michael A. Holt
Florida Bar No. 91156
mholt@fisherphillips.com
Garrett S. Kamen
Florida Bar No. 125824
gkamen@fisherphillips.com

*Attorneys for The Weiss Gifted and Talented School, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of April, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system and that service will be accomplished by the CM/ECF system or by electronic mail to all counsel of record or unrepresented parties listed on the attached service list.

FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

By: /s/ Michael A. Holt
Michael A. Holt
Florida Bar No. 91156
mholt@fisherphillips.com
Garrett S. Kamen
Florida Bar No. 125824
gkamen@fisherphillips.com

*Attorneys for The Weiss Gifted and Talented School, Inc.*

**SERVICE LIST**

Scott M. Behren, Esq.
scott@behrenlaw.com
Behren Law Firm
1930 North Commerce Parkway
Suite 4
Weston, Florida 33326
Telephone: 954.636.3802
Facsimile: 772.252.3365

Gregory S. Sconzo, Esq.
greg@sconzolawoffice.com
Sconzo Law Office P.A.
3825 PGA Boulevard
Suite 207
Palm Beach Gardens, Florida 33410
Telephone: 561.729.0940
Facsimile: 561.491.9459

*Attorneys for Plaintiff/Appellant*
*Julie Regina*

(Service via CM/ECF)

Michael A. Holt, Esq.
mholt@fisherphillips.com
Garrett S. Kamen, Esq.
gkamen@fisherphillips.com
Fisher & Phillips LLP
450 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800
Facsimile: 954.525.8739

*Attorneys for Defendant/Appellee*
*The Weiss Gifted and Talented School, Inc.*

(Service via CM/ECF)